**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **INFOGATION CORPORATION**<br><br>**v.**<br><br>**TOMTOM INTERNATIONAL BV** | **Case No. 2:24-cv-01022-JRG**<br>**(Lead Case)** |
| **GENERAL MOTORS LLC** | **Case No. 2:24-cv-01015-JRG**<br>**(Member Case)** |
| **NISSAN MOTOR CO., LTD.** | **Case No. 2:24-cv-01021-JRG**<br>**(Member Case)** |
| **VOLVO CAR CORPORATION and AB VOLVO** | **Case No. 2:24-cv-01023-JRG**<br>**(Member Case)** |
| **MAPBOX, INC. and MAPDATA OOO** | **Case No. 2:24-cv-01027-JRG**<br>**(Member Case)** |

**DEFENDANT MAPBOX, INC.'S RENEWED MOTION TO DISMISS FOR IMPROPER VENUE**

## TABLE OF CONTENTS


I. Introduction ..... 1

II. Statement of Issues ..... 2

III. Factual Background ..... 2

IV. Procedural Background ..... 3

V. Legal Standard ..... 3

VI. Argument ..... 6

A. Mapbox Does Not Reside in the Eastern District of Texas ..... 6

B. Infogation's Vehicle-Related Allegations Do Not Support Venue ..... 6

C. "Mapping Agents" Do Not Exist and, Regardless, Cannot Establish Venue ..... 7

1. "Mapping Agents" Do Not Exist ..... 8

2. Infogation Insufficiently Alleges the Second *Cray* Factor ..... 13

D. Infogation's Allegations Concerning Servers Do Not Establish Venue ..... 14

1. The Facts Do Not Support the Proposition that Mapbox Has Servers in this District ..... 14

2. Even if Servers Were Located in This District, Venue is Still Improper ..... 14

E. The Allegations Concerning Mapbox Employees in this District Fail to Establish Venue ..... 16

1. The Employees' Personal Residences Are Not "of [Mapbox]" ..... 17

(a) Attributes of Possession or Control ..... 18
(b) Conditions on Employment ..... 19
(c) Storage of Materials ..... 20
(d) Hold Itself Out as Having a Place of Business in this District ..... 21

2. The Employees' Residences Are Not "Regular and Established Place[s] of Business" ..... 24

F. Infogation Makes Irrelevant Allegations ..... 24

G. Dismissal of the Entire Action is Still Warranted Even Though the Foreign Entity MapData Has Been Joined to This Suit .............................................. 25

VII. Conclusion ..........................................................................................................29

# TABLE OF AUTHORITIES

*4WEB, Inc. v. NuVasive, Inc.*,
No. 2:23-CV-00192-JRG, 2024 WL 1932416 (E.D. Tex. May 2, 2024) ......................5, 17

*Adrian v. Regents of Univ. of California,*
No. CV 02-0381, 2002 WL 35646125 (W.D. La. Dec. 3, 2002) ..........................28

*AGIS Software v. T-Mobile USA Inc.*,
No. 2:21-cv-72-JRG-RSP, 2021 WL 6616856 (E.D. Tex. Nov. 10, 2021).....................5, 7

*Alltech, Inc. v. Carter*,
No. 5:08-CV-00325-KKC, 2010 WL 988987 (E.D. Ky. Mar. 15, 2010) .........................26

*Ambraco, Inc. v. Bossclip B.V.*,
570 F.3d 233 (5th Cir. 2008) ..........................................................................5

*Am. Cyanamid Co. v. Nopcp Chem. Co.*,
388 F.2d 818 (4th Cir. 1968) ..........................................................................17

*Andra Grp., LP Victoria's Secret Stores, L.L.C.*,
6 F.4th 1283 (Fed. Cir. 2021) ..........................................................................11

*Aponte-Torres v. Univ. Of Puerto Rico*,
445 F.3d 50 (1st Cir. 2006) ..........................................................................28

*AptusTech LLC v. Trimfoot Co., LLC*,
No. 4:19-CV-00133-ALM, 2020 WL 1190070 (E.D. Tex. Mar. 12, 2020)........................5

*Athletes Foot of Delaware, Inc. v. Ralph Libonati Co.,*
445 F. Supp. 35 (D. Del. 1977) ..........................................................................27

*B. Heller & Co. v. First Spice Mfg. Corp.*,
172 F. Supp. 46 (N.D. Ill. 1959) ..........................................................................17

*Bausch Health Ir. Ltd. v. Mylan Lab'ys Ltd.*,
No. CV2110403SRCJSA, 2022 WL 683084 (D.N.J. Mar. 8, 2022)................................23

*BillingNetwork Pat., Inc. v. Modernizing Med., Inc.*,
No. 17 C 5636, 2017 WL 5146008 (N.D. Ill. Nov. 6, 2017)...........................................23

*CCD Holdings, LLC v. Cenergy USA, Inc.*,
No. 18-CV-02749, 2019 WL 10369661 (N.D. Ill. Feb. 6, 2019) .....................................26

*Celgene Corp. v. Mylan Pharms. Inc.*,
17 F.4th 1111 (Fed. Cir. 2021) ....................22

*Clark v. DocuSign, Inc.*,
No. 21-CV-1007 (DLF), 2022 WL 16985185 (D.D.C. Nov. 15, 2022)....................24, 25

*Cont'l Ins. Co. v. M/V ORSULA,*
354 F.3d 603 (7th Cir. 2003) ....................27

*Cote v. Wadel*,
796 F.2d 981 (7th Cir. 1986) ....................28, 29

*Decapolis Sys., LLC v. Epic Sys. Corp.,*
No. W-21-CV-00434-ADA, 2021 WL 5908403 (W.D. Tex. Dec. 14, 2021) .......28

*Dubin v. United States*,
380 F.2d 813 (5th Cir. 1967) ....................27

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018)....................12

*ES Inc. v. NDI Techs., Inc.*,
No. 320CV00637RJCDCK, 2022 WL 899450 (W.D.N.C. Mar. 28, 2022)....................16

*Fourco Glass Co. v. Transmirra Prod. Corp.*,
353 U.S. 222 (1957)....................4

*Franco v. Mabe Trucking Co.,*
991 F.3d 616 (5th Cir. 2021) ....................27

*Gesture Tech. Partners, LLC v. Lenovo Grp. Ltd.*,
No. W-21-CV-00122-ADA, 2021 WL 6205789 (W.D. Tex. Dec. 29, 2021)....................22

*GreatGigz Sols., LLC v. ZipRecruiter, Inc.*,
No. W-21-CV-00172-ADA, 2022 WL 432558 (W.D. Tex. Feb. 11, 2022)....................24

*Green Fitness Equip. Co., LLC v. Precor Inc.*,
No. 18-CV-00820-JST, 2018 WL 3207967 (N.D. Cal. June 29, 2018) ....................23

*HomeBingo Network, Inc. v. Chayevsky*,
428 F. Supp. 2d 1232 (S.D. Ala. 2006)....................25

*In re Cray, Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)....................5, 7, 8, 13, 14, 16, 17, 18, 21, 23, 24, 25

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020) ....................8, 13, 14, 15

*In re Volkswagen Grp. of Am., Inc.*,
28 F.4th 1203 (Fed. Cir. 2022) ....................9, 10

*IngenioShare, LLC v. Epic Games, Inc.*,
No. W-21-CV-00663-ADA, 2022 WL 827808 (W.D. Tex. Mar. 18, 2022).........17, 19, 20

*JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*,
3:16-cv-03153, 2017 WL 4512501 (M.D. Tenn. Oct. 10, 2017)....................13

*Khan v. Hemosphere Inc.*,
825 F. App'x 762 (Fed. Cir. 2020) ....................17

*Lites Out, LLC v. OutdoorLink, Inc.*,
No. 4:17-CV-00192, 2017 WL 5068348 (E.D. Tex. Nov. 2, 2017)....................13

*Mantissa Corp. v. Great Am. Bancorp, Inc.*,
446 F. Supp. 3d 398 (C.D. Ill. 2020) ....................16

*MDSave, Inc. v. Sesame, Inc.*,
No. 6:21-CV-01338-ADA, 2023 WL 353998 (W.D. Tex. Jan. 11, 2023) ....................12

*Meyer v. Holley*,
537 U.S. 280 (2003)....................8

*Mirror Imaging, LLC v. Viewpointe Archive Servs. LLC*,
No. 3:22-CV-2857-X, 2023 WL 5311491 (N.D. Tex. Aug. 17, 2023) ....................16

*Ocugiene, Inc. v. ThermaMEDx, LLC,*
No. 2:22-CV-05607-AB-MAA, 2022 WL 18284980 (C.D. Cal. Dec. 8, 2022) ....................8

*Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*,
No. 1:13-CV-645, 2017 WL 5176355 (M.D.N.C. Nov. 7, 2017) ....................7, 23

*Regents of the Univ. of Minnesota v. Gilead Scis., Inc.*,
299 F. Supp. 3d 1034 (D. Minn. Oct. 20, 2017)....................7, 21, 24

*Rodgers v. Lincoln Towing Serv., Inc.*,
596 F. Supp. 13 (N.D. Ill. 1984) ....................25

*Selex ES Inc. v. NDI Techs., Inc.*,
No. 320CV00637RJCDCK, 2022 WL 899450 (W.D.N.C. Mar. 28, 2022)....................16

*Southern Leasing Partners, Ltd. v. McMullan*,
801 F.2d 783 (5th Cir. 1986) ....................25

*Square One Choices Inc. v. Ditec Sols. LLC*,
No. 22 CIV. 7680 (PGG), 2023 WL 5277869 (S.D.N.Y. Aug. 16, 2023) ....................21

*Spar, Inc. v. Info. Res., Inc.*,
956 F.2d 392 (2d Cir. 1992) ....................27

*Symbology Innovations, LLC v. Valve Corp.*, No. 2:23-CV-419-JRG,
Dkt. No. 110 at 16 (E.D. Tex. Jan. 31, 2025) ....................28

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
581 U.S. 258 (2017) ....................4, 5

*Tiare Tech., Inc. v. Dine Brands Glob., Inc.*,
No. 222CV00490JRGRSP, 2024 WL 607407 (E.D. Tex. Jan. 4, 2024) ....................8

*Uniloc USA, Inc. v. Ubisoft, Inc.*,
No. 2:16-CV-00781-RWS, 2018 WL 11436305 (E.D. Tex. Mar. 29, 2018) ....................18

*Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*,
695 F.2d 940 (5th Cir. 1983) ....................12

*Westech Aerosol Corp. v. 3M Co.*,
927 F.3d 1378 (Fed. Cir. 2010) ....................9

*Winterbottom v. Casey*,
283 F. 518 (E.D. Mich. 1922) ....................23

*Zilkr Cloud Techs., LLC v. RingCentral, Inc.*,
No. 3:21-CV-2807-S, 2022 WL 1102863 (N.D. Tex. Apr. 12, 2022) ....................15

Statutes:

28 U.S.C. § 1400(b) ....................1, 2, 3, 4, 5, 6, 7, 9, 12, 13, 15, 16, 17, 21, 25, 28
28 U.S.C. § 1406(a) ....................1, 2, 6, 27, 29

Rules:

Federal Rule of Civil Procedure 12(b)(2) ....................29
Federal Rule of Civil Procedure 12(b)(3) ....................1, 4, 27, 29

# I. INTRODUCTION

Plaintiff Infogation Corporation ("Infogation") has (for a second time) failed to show that the Eastern District of Texas is a proper venue. Infogation filed an Amended Complaint after being confronted with Mapbox, Inc.'s ("Mapbox") original Motion to Dismiss for Improper Venue (Dkt. 16, "Original Motion to Dismiss"), but it failed to meaningfully change (let alone correct) its allegations seeking to establish venue under § 1400(b). Mapbox, therefore, respectfully requests that the Court dismiss this entire action under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).

Infogation first attempts to establish venue by alleging that Mapbox possesses property in this District for the storing of its vehicles. But no such storage facilities exist, and no such vehicles exist. Both of these facts were clearly shown to Infogation by virtue of Mapbox's Original Motion to Dismiss. Second, Infogation reasserts—as it did in its Original Complaint—the argument that users of applications (not developed by Mapbox) are somehow Mapbox's "Mapping Agents." Mapbox's Original Motion to Dismiss detailed that this argument is unsupported by either facts, law or a colorable extension of any existing law. Third, Infogation again alleges—as it did in Original Complaint—that third-party servers owned by Amazon Web Services and used by Mapbox establish venue. Mapbox's Original Motion to Dismiss explained that these serves do not exist in this District. Infogation's Amended Complaint makes no factual showing that these allegations are true and, even if true, would not support venue under any legal theory or reasonable extension thereof. Finally, Infogation rehashes its allegations concerning work-from-home employees. These allegations are embedded with multiple material factual errors and are contrary to controlling law—both of which are points that have already been explained to Infogation.

The Eastern District of Texas is an improper venue as to Mapbox. Further, under 28 U.S.C. § 1406(a), dismissal is the appropriate remedy since Infogation has shown a lack of diligence by not once but twice filing a complaint in a clearly improper venue.

## II. STATEMENT OF ISSUES

Under 28 U.S.C § 1400(b):

1. Do unsupported allegations concerning the storage of vehicles in a judicial district establish venue, when the facts show that no such storage units or vehicles exist?

2. Do individuals become the agents of a technology company merely because devices that those individuals happen to be using are capable of transmitting location data?

3. Do allegations concerning the use of servers in a district establish venue when the facts fail to show both that these specific servers exist and that the defendant has any employees or agents present at a server in general?

4. Do allegations concerning the presence of a defendant's work-from-home employees establish venue when the facts show that the defendant places no conditions on these employees related to their residency in the district, has no ownership or control over the employees' residences, and does not publicly associate itself with the residences in any way?

## III. FACTUAL BACKGROUND

Mapbox is a technology company in the business of providing developer tools (software developer kits ("SDKs") and application programming interfaces ("APIs")) to developers and companies. Ex. A, Lee Dec. at ¶ 2. These tools empower the digital maps and location services within Mapbox's customers' mobile applications and websites. *Id.* Mapbox is a Delaware corporation. *Id.* at ¶ 3. Within the United States, Mapbox maintains office space in Washington, D.C. (which acts as its headquarters) and—only since March 2025—in San Francisco, CA. *Id.* at

¶ 4. At no time has Mapbox owned, leased, or had any real property interest in any real estate or physical location in the Eastern District of Texas. *Id.* at ¶ 5. Mapbox has not and does not maintain offices or co-working spaces in this District. *Id.* at ¶ 6.

## IV. PROCEDURAL BACKGROUND

Infogation initiated this patent infringement suit against Mapbox on December 11, 2024. *Infogation Corporation v. Mapbox, Inc.*, Case No. 2:24-cv-1027-JRG, Dkt. No. 1, (E.D. Tex. Dec. 11, 2024) ("Original Complaint"). On March 13, 2025, Mapbox filed its Original Motion to Dismiss. Infogation did not file a response to this Original Motion to Dismiss. Infogation also did not seek leave to conduct venue discovery. Instead, on March 27, Infogation filed an amended complaint.[1] Dkt. No.[2] 24. On March 28, the Court found that Mapbox's Original Motion to Dismiss was mooted by the filing of Infogation's Amended Complaint. Dkt. No. 26.

In its Original Complaint, Infogation asserted four theories for establishing venue under § 1400(b). These theories were that, in this District, Mapbox:

(1) "owns and deploys a fleet of mapping vehicles" (Original Complaint at ¶¶ 10–11);

(2) "has and uses its customers and their digital device [sic] as authorized map agents[,]" *i.e.*, individuals that Infogation labels as "Mapping Agents" (*see id.* at ¶¶ 13–17, 19);

(3) uses "Third Party Sub-processors," namely, servers owned by Amazon Web Services (*see id.* at ¶ 18); and

(4) "maintains permanent employees" (*see id.* at ¶¶ 10, 12, 19–24).

---

[1] Mapbox's answer deadline was extended to May 19, 2025. Dkt. No. 39.

[2] Unless indicated otherwise, citations to the docket are in reference to the lead case, *Infogation Corporation v. TomTom International BV*, Case No. 2:24-cv-1022-JRG (E.D. Tex.).

Except for the first of the theories listed above, the filing of Infogation's Amended Complaint resulted in little or no change in the allegations supporting these theories. This can be seen by comparing the paragraphs in the below table:

| Theory | Original Complaint Paragraphs | Amended Complaint Paragraphs |
|---|---|---|
| Vehicles | ¶¶ 10–11 | ¶ 14 |
| "Mapping agents" | ¶¶ 13–17 | ¶¶ 17–21 |
| Third-party servers | ¶ 18 | ¶ 22 |
| "Permanent employees" | ¶¶ 10, 12, 19–24 | ¶¶ 13, 23–26 |

The only theory to undergo material change is the "vehicles" theory. Infogation now alleges, in contradiction with facts provided by Mapbox's Original Motion to Dismiss (*see* Ex. A,[3] Lee Dec. at ¶¶ 5, 7–8), that Mapbox "store[s] vehicles used for internal product testing in this District." Dkt. No. 24 at ¶ 14.

## V. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Section 1400(b) of Title 28 is the "sole and exclusive provision controlling venue in patent infringement actions" and is not supplemented by the general venue statutes. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017) (citing *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)). Pursuant to 28 U.S.C. § 1400(b), venue lies (1) "in the judicial district where the defendant resides[]" or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

[3] Exhibits A through F attached to the instant Motion are the same exhibits that were attached to Mapbox's Original Motion to Dismiss (*i.e.*, Dkt. Nos. 16-2 through 16-7). For ease of reference, these documents are cited throughout by their exhibit coversheets, as opposed to their previous docket numbers.

For the first prong, the term "resides" refers only to a defendant's state of incorporation. *TC Heartland*, 581 U.S. at 262.

Under the second prong, a regular and established place of business must be (1) "a physical place in the district;" (2) that is "a regular and established place of business;" and (3) "it must be the place of the defendant." *In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) ("*Cray*").

In regard to the third requirement, the Federal Circuit has provided a non-exhaustive list of relevant factors for resolving whether a certain "place" can be said to be "of the defendant." *Cray*, 871 F.3d at 1363–64. These factors include: (1) whether a defendant owns or leases the place, or exercises other attributes of possession or control; (2) whether the employment is conditioned on an employee's residence in the district; (3) whether the employee stores materials in the district for distribution or sale; and (4) whether the defendant holds itself out as having a place of business in the district. *Id*. Such considerations are applicable in determining whether a remote employee's home qualifies as a being a "place of the defendant." *4WEB, Inc. v. NuVasive, Inc.*, No. 2:23-CV-00192-JRG, 2024 WL 1932416, at *2 (E.D. Tex. May 2, 2024).

When challenged, the plaintiff has the burden of establishing that venue is proper under § 1400(b). *AptusTech LLC v. Trimfoot Co., LLC*, No. 4:19-CV-00133-ALM, 2020 WL 1190070, at *1 (E.D. Tex. Mar. 12, 2020). "A court may decide whether venue is improper based upon (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *AGIS Software v. T-Mobile USA Inc.*, No. 2:21-cv-72-JRG-RSP, 2021 WL 6616856, at *1 (E.D. Tex. Nov. 10, 2021) (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2008)), *R&R adopted*, 2022 WL 178804 (E.D. Tex. Jan. 19, 2022).

Finally, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## VI. ARGUMENT

### A. Mapbox Does Not Reside in the Eastern District of Texas

Mapbox is incorporated in Delaware. Ex. A, Lee Dec. at ¶ 3. Consequently, for purposes of § 1400(b), Mapbox does not reside in Texas. *See Sonus Networks, Inc. v. Metaswitch Networks Ltd.*, No. 2:18-CV-00057-RWS, 2019 WL 11025873 (E.D. Tex. Mar. 27, 2019), at *2. ("Because Metaswitch USA is incorporated in Delaware, it does not reside in Massachusetts for purposes of § 1400(b).").

### B. Infogation's Vehicle-Related Allegations Do Not Support Venue

Infogation's allegation that "Mapbox owns and/or leases property in this District" is incorrect. *See* Dkt. No. 24 at ¶ 14. Mapbox expressly made Infogation aware of this prior to the filing of Infogation's Amended Complaint: "At no time has Mapbox owned, leased, or had any real property interest in any real estate or physical location in the Eastern District of Texas . . . ." Ex. A, Lee Dec. at ¶ 5; *see also id.* at ¶¶ 4, 6. Given that Infogation's general allegation fails, its specific allegation, *i.e.*, that "Mapbox owns or leases property in this District to store vehicles[,]" does so as well. *See id.* at ¶¶ 7–8. Indeed, Infogation was also already supplied with specific factual showings concerning the lack of any Mapbox vehicles in this District. *See id.* at ¶ 8 ("Mapbox is unaware of any operation of [vehicles it has previously possessed] having occurred in Texas."). Infogation also cites to no factual support for these allegations. In sum, worse than being unsubstantiated, the allegations made by Infogation in paragraph 14 of its Amended

Complaint are in direct contradiction with previously made factual showings. *Compare* Dkt. No. 24 at ¶ 14 with Ex. A, Lee Dec. at ¶¶ 5–8.

Further, even if there were facts showing that a vehicle owned by Mapbox had been present in this District at some point in time (there are no such facts), it would be of no help to Infogation's argument. This Court has already rejected the proposition that the presence of a vehicle can establish venue under § 1400(b). *See AGIS*, 2021 WL 6616856, at *3. In *AGIS*, the plaintiff argued for venue by pointing to the presence of vehicles in this District that were owned and controlled by the defendant, Lyft. *Id.* This Court was unpersuaded, expressly holding that vehicles are incapable of fulfilling two of the three requirements laid out by the Federal Circuit in *Cray*: "[E]ven if a vehicle is considered a physical place under the first requirement, which the Court holds that it is not, it fails the second requirement because a vehicle is transient, not established." *Id.* The *AGIS* decision's treatment of vehicles in the context of § 1400(b) matches that of other district courts. *See Regents of the Univ. of Minnesota v. Gilead Scis., Inc.*, 299 F. Supp. 3d 1034, 1043 (D. Minn. Oct. 20, 2017) ("[L]ease payments for transient vehicles do not sufficiently evidence [the defendant's] regular and established physical place of business in [the district]."); *Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, No. 1:13-CV-645, 2017 WL 5176355, at *11 (M.D.N.C. Nov. 7, 2017) ("[Plaintiff's] reliance on the fact that [Defendant] maintained a company car within the district is unavailing.").

### C. "Mapping Agents" Do Not Exist and, Regardless, Cannot Establish Venue[4]

Infogation next attempts to establish venue by alleging that Mapbox's customer's end users act as "authorized map agents" in the District. *See* Dkt. No. 24 at ¶¶ 17–21. But these purported

[4] Infogation made no meaningful change to its allegations concerning its "Mapping Agents" venue theory. *Compare* Original Complaint at ¶¶ 13–17 *with* Dkt. No. 24 at ¶¶ 17–21. Within these paragraphs, Infogation only swapped out the term "Defendant" for the term "Mapbox." This lack

"Mapping Agents" are, in actuality, simply the end users of certain applications developed by Mapbox's customers using Mapbox's SDKs and APIs. *See* Ex. A, Lee Dec. at ¶¶ 9–14. Mapbox does not control these end users but merely collects data that the SDK passively generates so that Mapbox may deliver services (such as turn-by-turn navigation) or improve its maps. *Id.* at ¶¶ 10, 13. This run-of-the-mill example of a technology company possessing the ability to gather certain data from a subset of end users is far from the exacting factual showing that would lead to the creation of an agency relationship. *Compare id.* at ¶¶ 9–14 *with Tiare Tech., Inc. v. Dine Brands Glob., Inc.*, No. 2:22-CV-00490-JRG-RSP, 2024 WL 607407, at *8 n.5 (E.D. Tex. Jan. 4, 2024) (finding that restaurant staff were the franchisor's agents when the franchisor could (*inter alia*) "at any time change the very recipe used by the restaurants . . . .").

Also, under the second *Cray* element, the agent must be "conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F.3d 1338, 135 (Fed. Cir. 2020). But Infogation fails to adequately allege both the "business" being conducted and where it is being conducted. *See* Dkt. No. 24 at ¶¶ 17–21.

### 1. "Mapping Agents" Do Not Exist

"The essential elements of agency are (1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'" *Google*, 949 F.3d at 1345 (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003)). Infogation has failed to put forth sufficient allegations in regard to all three elements, and facts external to the Complaint also confirm the nonexistence of any agency relationship. *See Ocugiene, Inc. v. ThermaMEDx, LLC,* No. 2:22-CV-

---

of change exists even though Mapbox factually (*see* Ex. A, Lee Dec. at ¶¶ 9–14) and legally (*see* Original Motion to Dismiss at § VI.C) refuted Infogation's allegations in its Original Motion to Dismiss.

05607-AB-MAA, 2022 WL 18284980, at *3 (C.D. Cal. Dec. 8, 2022) (finding that Plaintiff's argument that, under § 1400(b), third-party doctors were the agents of Defendant because the latter listed the former on its "Doctor Locator" website feature was frivolous and unsupported by a plausible theory).

Concerning the first element, the Federal Circuit requires the ability of a principal to exercise "interim control" over the purported agent, *e.g.*, the interim right to issue "step-by-step instructions." *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1209 (Fed. Cir. 2022). In *Volkswagen*, the Federal Circuit rejected the proposition that dealerships' employees were the agents of Volkswagen even though contractual provisions dictated aspects of (*inter alia*) the look of the dealerships, the use of specific tools and software, and mandatory employee training. *Id.* at 1211. Here, Infogation only cites (at Dkt. No. 24 at ¶ 17 nn. 2–3) documentation that makes general references to Mapbox's ability to collect data, *e.g.*, Mapbox "figur[ed] out early on how to make updates using information gathered by its customers' digital devices."[5] It then couples such citations with conclusory, factually unadorned allegations: "Mapbox maintains 'interim control' over the Mapping Agents' work, in which they rely on interactions and Mapbox's instructions within the scope of their work." Dkt. No. 24 at ¶ 17; *see also id.* at ¶ 21.

While the conclusory nature of these allegations, alone, render them legally deficient, the factual situation they allude to plainly fails to permit for proper venue in this District. *See Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2010) ("Simply stating that 3M has a regular and established place of business within the judicial district, without more, amounts to a mere legal conclusion that the court is not bound to accept as true."). If a contract governing

[5] https://visionfund.com/insights/mapbox-success-in-navigation-mapping-industry-sector (last accessed May 19, 2025).

multiple details of a dealership's business failed to create an agency relationship, then by no means could a generic, unobtrusive data collection process do so. *See Volkswagen*, 28 F.4th at 1209.

Additional facts confirm this conclusion. Mapbox is in the business of providing developer tools, *e.g.*, SDKs and APIs, to developers and companies. Ex. A, Lee Dec. at ¶ 2. *See also* Ex. B, Mapbox Privacy Policies at p. 12. These companies use Mapbox's tools to empower digital maps and location services in their mobile or other applications or websites (collectively, "Customer Applications"). Ex. A, Lee Dec. at ¶ 2. The individuals ("End Users") that use a Customer Application that contains a Mapbox SDK, such as a driver interacting with his navigation system, are not Mapbox's customers and Mapbox shares no contractual relationship with them. *Id.* at ¶ 9. In connection with their use of Customer Applications, no instructions, directives, or dialogue are exchanged between End Users and Mapbox, with the exception of the functionality (present only in certain maps) of alerting an End User that he or she can provide optional feedback to help improve the map. *Id.* at ¶ 11. For any sharing of location data to occur, appropriate permissions must be received by the developer or owner of the Customer Application from the End User; the End User may subsequently opt out at any time, ending the provision of location data. *Id.* at ¶ 12. *See also* Ex. B, Mapbox Privacy Policies at pp. 14, 22; Ex. C, Mapbox Location Telemetry at p. 3 ("Users should be in charge of their own location telemetry data."). Neither at the time Infogation's Original Complaint was filed nor at any other time has Mapbox possessed a right, contractual or otherwise, to control or constrain the activities of the End Users. Ex. A, Lee Dec. at ¶ 13. This is true not only in regard to the activity of providing location data generated by an End User's Customer Application but in general. *Id.* Indeed, Mapbox has no way of even knowing who the End Users are. No End User identification information—such as a VIN, email, or

username—is received by Mapbox. *Id.* at ¶ 14. *See also* Ex. C, Mapbox Location Telemetry at 3 ("Mapbox has never collected advertising identifiers . . . .").

Further, Infogation appears to find its belief that Mapbox obtains a benefit from location data gathered from an End User's application significant in determining "control" by Mapbox. *See* Dkt. No. 24 at ¶ 17. But this contradicts the relevant caselaw. The Federal Circuit has found that performing "a service that may benefit" another party is not sufficient to show that the beneficiary "controls [the] process." *Andra Grp., LP Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289 (Fed. Cir. 2021). Thus, assuming the End Users provide a "service" (they do not), the existence of some discernable "benefit" to Mapbox does nothing in the way of salvaging Infogation's failed agency theory. *See id.*

A similar analysis applies to both the second element (consent by the principal) and the third element (consent by the agent) of an agency relationship. Infogation's relevant allegations are conclusory and false. *See* Dkt. No. 24 at ¶ 17 ("Mapbox manifests assent to the Mapping Agents that they shall act on Mapbox's behalf and subject to its control, and the Mapping Agents manifest assent or otherwise consent to act."); *see also id.* at ¶ 18. Mapbox has no contractual relationship with, nor does it exert control over, any of its customers' End Users. Ex. A, Lee Dec. at ¶ 13. In fact, the document Infogation cites as support for its false claim—Mapbox's Terms of Service (Dkt. No. 24 at ¶ 18 n.4)—confirms the opposite. Mapbox's Terms of Service is a collection of terms that a *developer* of a Customer Application—*not* an End User—agrees to. This is evident even from a cursory reading, since the terms consistently treat "End Users" as third parties—*i.e.*, *not* signatories to the contract. *See* Ex. D, Mapbox Terms of Service at p. 11 ("Content you or *your End Users* submit . . . .") (emphasis added); *see also id.* at pp. 3, 13. In other words, Infogation alleges that this contract (*see* Dkt. No. 24 at ¶ 18) is between Mapbox and

End Users (*i.e.* "Mapping Agents") when it clearly is not; a quick review shows that it is between Mapbox and developers or companies.

This obvious error deprives Infogation of evidence of consent and is fatal to its agency theory. In addition, the facts discussed above concerning the lack of instructions, directives, or dialogue between Mapbox and an End User (*see* Ex. A, Lee Dec. at ¶ 11) foreclose a finding of the requisite form of consent from either party. *See Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983) ("To create an agency relationship based on actual authority, such authority must have been delegated to the agent either by words that expressly or directly authorize him to do a delegable act, or such authority may be implied from the facts and circumstances attending the transaction in question.") (citing 2 Tex.Jur.2d Agency § 36; 3 Am.Jur.2d Agency § 86).

In short, "Mapping Agents" do not exist, and Infogation failed in its attempt to use an agency theory to establish venue. *See MDSave, Inc. v. Sesame, Inc.*, No. 6:21-CV-01338-ADA, 2023 WL 353998, at *4 (W.D. Tex. Jan. 11, 2023) (finding that venue was improper and rejecting the proposition that the defendant, who "hosts an online marketplace connecting patients and [medical] providers," was the principal of the medical providers). To hold otherwise would logically lead to the odd conclusion that millions of citizens are acting as the agents of each of the numerous companies that they are currently sharing location data with. While common sense shows that this factually cannot be true, it also negates any limits of where venue could be established under § 1400(b). A company would assuredly have an "agent" somewhere in each judicial district. *See EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564, at *3 (E.D. Tex. June 4, 2018) (Bryson, J., sitting by designation) ("The

purpose of the statutory limits on venue in the patent venue statute was to protect defendants from being sued in forums distant from their place of incorporation or residence.”).

### 2. Infogation Insufficiently Alleges the Second *Cray* Element

Infogation’s agency theory fails for another reason. The identification of an agent (which Infogation never achieves) is not enough, in and of itself, under § 1400(b). The agent, under the second *Cray* element, must be “conducting the defendant’s business at the alleged ‘place of business.’” *Google*, 949 F.3d at 1345. Here, Infogation fails to specify both the “business” that these (supposed) agents are conducting and an actual place where they are conducting it. *See* Dkt. No. 24 at ¶¶ 17–21.

A person is not “conducting business” solely based on the fact that his phone or computer happens to be sending out certain electronic signals. And the vague notion of the undefined area people cover as they go about their day while using a Customer Application does not suffice as a “place of business.” *See Lites Out, LLC v. OutdoorLink, Inc.*, No. 4:17-CV-00192, 2017 WL 5068348, at *4 (E.D. Tex. Nov. 2, 2017) (finding activity that fell “within the virtual spaces and electronic communications from one person to another” could not “be a ‘physical place’ of business for patent venue purposes”). Infogation’s incomplete and inapposite agency allegations cannot establish venue. *See JPW Indus., Inc. v. Olympia Tools Int’l, Inc.*, 3:16-cv-03153, 2017 WL 4512501, at *3 (M.D. Tenn. Oct. 10, 2017) (holding that “connections with distributors, retailers, and consumers in this district” fail to satisfy the “physical presence” requirement of *Cray*).

### D. Infogation's Allegations Concerning Servers Do Not Establish Venue[6]

Mapbox does not own or lease any server, including any hosted by Amazon Web Services ("AWS"), that is located in the Eastern District of Texas. Ex. A, Lee Dec. at ¶¶ 15–16. The foregoing, alone, defeats venue. *See* Dkt. No. 24 at ¶ 22.

Infogation's theory is faulty for another independent reason; namely, the mere presence of a device, such as a server, is not enough to satisfy the second *Cray* requirement of a "regular and established place of business." *See Google*, 949 F.3d 1340–41 (finding that venue was improper in the district where Google servers owned by internet service providers were located).

#### 1. The Facts Do Not Support the Proposition That Mapbox Has Servers in This District

Mapbox does not own or lease any server that is located in the Eastern District of Texas. Ex. A, Lee Dec. at ¶ 15. Mapbox uses AWS as a hosting provider, but none of these servers are in Texas. *Id*. at ¶ 16. Infogation's allegation concerning a purported "leas[ing]" of servers in this District is, accordingly, incorrect. *See* Dkt. No. 24 at ¶ 22.

#### 2. Even If Servers Were Located in This District, Venue Is Still Improper

Further, the Federal Circuit has held that a "'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *Google*, 949 F.3d at 1345. Given this, even assuming (*arguendo*) that Mapbox-employed servers were located in this District, venue would nonetheless be improper. No Mapbox employee has as a responsibility—or is even permitted—to be physically present at any AWS hosted server in this District (or anywhere else).

---

[6] Infogation made no changes to its allegations concerning its servers-related venue theory. *Compare* Original Complaint at ¶ 18 *with* Dkt. No. 24 at ¶ 22. Again, this is despite Mapbox factually (*see* Ex. A, Lee Dec. at ¶¶ 15–17) and legally (*see* Original Motion to Dismiss at § VI.D) refuting Infogation's allegations in its Original Motion to Dismiss.

Ex. A, Lee Dec. at ¶ 17. The foregoing is true in regard to any other third-party operated server as well. *Id.* Nor has Infogation put forth any facts (and none exist) supporting the existence of an agency relationship between Mapbox and AWS personnel; indeed, Infogation does not even point to particular facts showing the actual activities being conducted by AWS personnel (or by any other type of personnel, for that matter) at the server locations. *See* Dkt. No. 24 at ¶ 22.

In addition, the situations in which the use of third-party operated servers in a judicial district may establish venue under § 1400(b) have been circumscribed by the Federal Circuit's holding in *Google*. *See Google*, 949 F.3d at 1345. And, given the facts noted directly above, the instant situation is not one of the exceptions.

In *Google*, the Federal Circuit found that venue was improper in the judicial district where Google servers were located. *Id.* at 1346. Google had contracted with internet service providers ("ISPs") to host within their datacenters certain Google servers that functioned as local caches for its data. *Id.* at 1340. Noting that no Google employees were present at the datacenters, the relevant inquiry became for the Federal Circuit whether the ISPs were acting as Google's agents and "conducting [its] business." *Id.* at 1345. The Federal Circuit found that none of the three activities engaged in by the ISPs—(1) providing network access; (2) installing the servers; and (3) performing maintenance work—gave rise to such a relationship. *Id.* at 1346. This was because the first activity lacked the necessary control from Google, the second was "a one-time event for each server" and, thus, not "regular and established," and the third because "maintenance activities cannot, standing alone, be considered the conduct of Google's business." *Id.*

Multiple district courts have found that server hosting and other similar arrangements are insufficient to establish venue. *See, e.g.*, *Zilkr Cloud Techs., LLC v. RingCentral, Inc.*, No. 3:21-CV-2807-S, 2022 WL 1102863, at *5 (N.D. Tex. Apr. 12, 2022) (finding that a defendant's servers

at a third-party datacenter did not constitute a "regular and established place of business"); *Selex ES Inc. v. NDI Techs., Inc.*, No. 3:20-CV-00637-RJC-DCK, 2022 WL 899450, at *3 (W.D.N.C. Mar. 28, 2022) (finding improper venue despite the fact that, within the district, an employee of the defendant was installing and maintaining "covert automated license plate reader products"); *Mantissa Corp. v. Great Am. Bancorp, Inc.*, 446 F. Supp. 3d 398, 404 (C.D. Ill. 2020) ("Plaintiff failed to establish venue exists over its claim against Fiserv Solutions on the basis of the existence of ATMs, ATM services, or maintenance of ATMs in this District.").

The facts fail to show the presence of Mapbox servers in this District. And servers hosted by AWS (or any other third party) cannot establish venue. *See Mirror Imaging, LLC v. Viewpointe Archive Servs. LLC*, No. 3:22-CV-2857-X, 2023 WL 5311491, at *1 (N.D. Tex. Aug. 17, 2023) (rejecting argument that the presence of a third-party datacenter in the district housing the defendant's servers permitted venue under § 1400(b)).

### E. The Allegations Concerning Mapbox Employees in this District Fail to Establish Venue[7]

The presence of Mapbox work-from-home employees in this District—there are only six (6)—cannot be used as a basis for establishing venue. This is true for at least two reasons. First, the personal residences of these employees (which is where each of them works) cannot be considered to be places "of the defendant." *See Cray*, 871 F.3d at 1365 ("The statute clearly requires that venue be laid where the defendant has a regular and established place of business, not where the defendant's employee owns a home in which he carries on some of the work that he

[7] Infogation made very little change to its allegations concerning Mapbox employees; none of it is materially helpful to its theory. *Compare* Original Complaint at ¶¶ 10, 19–24 *with* Dkt. No. 24 at ¶¶ 13, 23–26. Basically, Infogation added unsubstantiated (and incorrect) allegations concerning the storing of certain materials and purported traveling by employees. *See* Dkt. No. 24 at ¶ 25. Thus, Infogation did not meaningfully respond to Mapbox's legal (*see* Original Motion to Dismiss at § VI.E) and factual (*see* Ex. A, Lee Dec. at ¶¶ 18–39) showings.

does for the defendant.") (quoting *Am. Cyanamid Co. v. Nopcp Chem. Co.*, 388 F.2d 818, 820 (4th Cir. 1968)). Second, assuming (*arguendo*) that the residences are "of [Mapbox]," venue still fails because the residences are not "regular and established." *See B. Heller & Co. v. First Spice Mfg. Corp.*, 172 F. Supp. 46, 52 (N.D. Ill. 1959) ("[I]t is readily seen that the phrase ['regular and established'] necessarily include some degree of control by the party engaged in the business[,]" and such control is absent in regard to trade organizations when "the organizations need not have an annual trade show, they need not hold it within this district, [and] they need not rent space to defendants.").

In sum, the general presence of remote employees in a judicial district cannot establish venue under § 1400(b). *See 4WEB*, 2024 WL 1932416, at *3 n.3 ("The general presence of remote employees in this District does not establish that the Defendant has 'a physical, geographical location in the district from which the business of the defendant is carried out.'") (quoting *Cray*, 871 F.3d at 1362); *IngenioShare, LLC v. Epic Games, Inc.*, No. W-21-CV-00663-ADA, 2022 WL 827808, at *3 (W.D. Tex. Mar. 18, 2022) ("A work-from-home employee's residence is insufficient alone."); *Khan v. Hemosphere Inc.*, 825 F. App'x 762, 769 (Fed. Cir. 2020) (unpublished) ("[T]he fact that certain *employees* live or conduct business in the district does not establish proper venue over *defendants* in the district.") (emphasis in original).

**1. The Employees' Personal Residences Are Not "of [Mapbox]"**

The Federal Circuit has provided a non-exhaustive list of relevant factors for resolving whether a certain "place" can be said to be "of the defendant:" (1) whether a defendant owns or leases the place, or exercises other attributes of possession or control; (2) whether the employment is conditioned on an employee's residence in the district; (3) whether the employee stores materials in the district for distribution or sale; (4) whether the defendant holds itself out as having a place

of business in the district. *Cray*, 871 F.3d at 1363–64. Each of these factors weigh against finding that venue is proper in this District.

**(a) Attributes of Possession or Control**: Each of the six (6) Mapbox employees (collectively, "Remote Employees") present in this District work remotely from their homes. Ex. A, Lee Dec. at ¶ 18. In other words, the Remote Employees are permitted to conduct their work for Mapbox out of their own residences (or any other place) anywhere in the United States. *Id*. at ¶ 19. Mapbox does not currently, nor has it ever, owned, leased, or rented any portion of the premises in which the Remote Employees reside in this District. *Id*. at ¶ 20. There exists no property, contractual, or other legal right that entitles Mapbox to control or possess the locations (*i.e.*, the personal residences) from which the Remote Employees work. *Id*. at ¶ 21. There is no contractual or business requirement that the Remote Employees remain in this District. *Id*. at ¶ 22. The Remote Employees just happened to live in this District when they commenced employment with Mapbox. *Id*. at ¶ 23. Mapbox has not and does not reimburse the Remote Employees' their costs associated with maintaining their residences; nor has Mapbox ever directly contributed to the rent or mortgage payments of these employees. *Id*. at ¶ 24. Mapbox has no responsibilities or obligations concerning the payment of rents or mortgages associated with any Remote Employee residence. *Id*. at ¶ 25. The Remote Employees, themselves, selected their residences in this District without any input or guidance from Mapbox. *Id*. at ¶ 26. As far as Mapbox is concerned, the Remote Employees could change their residences to another location within the United States at any time in the future. *Id*. at ¶ 27.

Under these facts, Mapbox employees in this District do not establish venue. *See Uniloc USA, Inc. v. Ubisoft, Inc.*, No. 2:16-CV-00781-RWS, 2018 WL 11436305, at *4 (E.D. Tex. Mar. 29, 2018) (finding improper venue when "[t]here [was] no indication that [Defendant] controls,

owns, or leases the employee's house, or that [Defendant] has otherwise established or ratified [the employee's] home as a place of business."). This point is in no way eroded by any restrictions or instructions Mapbox may place on the conduct of the Remote Employees (*e.g.*, requiring attendance at remote meetings or the completion of certain projects), since the present analysis is concerned with control over the *place*, not the employee. *See IngenioShare*, 2022 WL 827808, at *3 ("[T]he relevant inquiry is whether Epic controls the place, not the conduct, of its employees.").

**(b) Conditions on Employment**: Mapbox does not condition or require these six Remote Employees to reside in this District. Ex. A, Lee Dec. at ¶ 28. Mapbox never dictated to these employees that their houses be located in this District. *Id*. at ¶ 29. These employees are permitted to relocate to cities outside of the Eastern District of Texas. *Id*. at ¶ 30. No monetary or work incentives (*e.g.*, bonuses, increased vacation time, or the right to use a company vehicle) have been offered by Mapbox to these employees by virtue of their choice to live in this District. *Id*. at ¶ 31. Put succinctly, Mapbox imposes no judicial-district specific conditions or restrictions on the Remote Employees. Further, if one or all of the Remote Employees happened to move out of the Eastern District of Texas, Mapbox would not, as a response, mandate either that other current employees relocate to this District or that new employees be hired and required to work out of this District. *Id*. at ¶ 32.

Infogation consistently makes misstatements concerning the presence of Mapbox employees in this District, and allegations (apparently) related to the instant factor are no exception. *See* Dkt. No. 24 at ¶ 26. Infogation alleges that Mapbox has "solicited salespeople in public advertisements to cover" this District and that Mapbox "preferred that those employees live in their assigned area." *Id*. Infogation is wrong on both accounts. No Mapbox employee residing in this District conducts sales, marketing, or business development as a job responsibility. Ex. A,

Lee Dec. at ¶ 33. And, consequently, Mapbox does not (and could not) have any preferred sales area for these individuals—not in this District or elsewhere. *Id*. Infogation cites one webpage[8] in support of these allegations. But this is a job listing for a software engineer that prioritizes candidates in the Dallas "(or surrounding)" area. It is not, as Infogation contends, a "solicit[ation]" for a "salesp[erson]" requiring that that person "cover" this District. *See* Dkt. No. 24 at ¶ 26 n.10.

Infogation also errs when it alleges that any of these Remote Employees have, as a job responsibility, "travel[ing] to locations within this District" or are assigned to "particular markets." *See* Dkt. No. 24 at ¶ 25. None of that is true. Ex. A, Lee Dec. at ¶¶ 22–23, 26–30, 33; Ex. G, Second Lee Dec. at ¶ 3. Further, these allegations are an instance of Infogation shifting focus away from the relevant inquiry. The relevant inquiry is not the existence of some purported activity but is, instead, the exercise of control over an actual, physical place. *See IngenioShare*, 2022 WL 827808, at *3.

The foregoing means that this factor does not support venue. *See id*. at *4 ("Because Epic's employees in the Western District of Texas are free to move and work remotely outside of this District, this factor does not support a finding a venue.").

**(c) Storage of Materials**: Mapbox does not store physical inventory at or distribute physical products out of any of the Remote Employees' residencies. Ex. A, Lee Dec. at ¶ 34. Mapbox also does not conduct in-person product demonstrations or technical tutorials for customers at any of these residencies. *Id* at ¶ 35. The servers that Mapbox maintains for the purposes of storing and providing Mapbox-related electronic information to employees are not now, nor have they ever been, housed at any of the Remote Employees' residences. Ex. G, Second

[8] *See* Dkt. No. 24 at ¶ 26 n.10 (citing https://jobs.ashbyhq.com/mapbox/acc930b1-8f95-490a-a526-086061d4d17e (last accessed May 19, 2025)).

Lee Dec. at ¶ 4. This factor, accordingly, weighs against a finding of proper venue. *See Regents*, 299 F. Supp. 3d at 1041 (finding that, even though "some [remote] employees kep[t] a limited quantity of [Defendant's] literature in their homes [in the district]," venue was improper under § 1400(b)).

Simply put, this is not a situation where an employee's home is used "to store [a defendant's] literature, documents and products [or] . . . like [a] distribution center[], stor[e] inventory that the employees then directly t[ake] to . . . clients." *See Square One Choices Inc. v. Ditec Sols. LLC*, No. 22 CIV. 7680 (PGG), 2023 WL 5277869, at *10 (S.D.N.Y. Aug. 16, 2023) (quoting *Cray*, 871 F.3d at 1362). This is common sensical, given that Mapbox is in the business of providing items such as SDKs and APIs as opposed to manufacturing some physical widget. *See* Ex. A, Lee Dec. at ¶¶ 2, 36.

Infogation also ambiguously alleges that "each night" employees "store" certain "tools" at their homes and then "travel" to perform undefined "business activities" in the District. Dkt. No. 24 at ¶ 25. This is false. *See* Ex. G, Second Lee Dec. at ¶¶ 3, 5. No home of a Remote Employee is used for the purposes of storage, including for literature, documents, or tools. *Id.* at ¶ 5. And, as already noted, no Remote Employee must as a part of his or her job travel to particular locations in this District. *Id.* at ¶ 3.

**(d) Hold Itself Out as Having a Place of Business in This District**: Mapbox does not hold itself out as having the residences of the Remote Employees as places of its business. Mapbox has not listed the address of any of the Remote Employees on its website or in any public directory that it maintains. Ex. A, Lee Dec. at ¶ 37; *see also* Ex. E, Mapbox's LinkedIn (listing Mapbox's location as Washington, D.C.); Ex. F, Mapbox Locations (Mapbox's website listing its United States locations as San Francisco and Washington, D.C.). Mapbox has not installed nor required

that there be signage or public-facing material of any form at the Remote Employees' residences, including specifically any material that would associate the residences with Mapbox. Ex. A, Lee Dec. at ¶ 38. Mapbox has not advertised or publicly represented that the residences of these employees are its business locations. *Id*. at ¶ 39.

In its Amended Complaint, Infogation points to a screenshot (Dkt. No. 24 at ¶ 23) of a Mapbox employee's LinkedIn profile:




But the only inference that this screenshot (arguably) allows is that a Mapbox employee lives in Frisco, TX. Arriving at other factual conclusions from this screenshot—or, more generally, from any LinkedIn profile—must be done through the process of speculation and is, therefore, of no help to Infogation. On this point, the Federal Circuit's decision in *Celgene Corp. v. Mylan Pharms. Inc.* is instructive. 17 F.4th 1111, 1123 (Fed. Cir. 2021). There, the plaintiff offered business cards depicting the name and addresses of employees together with LinkedIn profiles in its attempt to show that the defendants had a place of business in the district. *Id*. The Federal Circuit was unpersuaded, finding such as "all too speculative to show ratification of those addresses as [the defendants'] places of business (much less that the employees themselves regularly conducted business specifically at their homes)." *Id*.

The same result obtains here. *See Gesture Tech. Partners, LLC v. Lenovo Grp. Ltd.*, No. W-21-CV-00122-ADA, 2021 WL 6205789, at *3 (W.D. Tex. Dec. 29, 2021) ("[T]he LinkedIn profiles [which the Defendants advertise on their website] are too speculative to show the

employees' homes are 'regular and established places of business of the Defendants' within the District."); *Green Fitness Equip. Co., LLC v. Precor Inc.*, No. 18-CV-00820-JST, 2018 WL 3207967, at *4 (N.D. Cal. June 29, 2018) (finding that the plaintiff's proffered facts of a remote employee's social media accounts and telephone number failed to meet its burden of showing that that employee's home was a place of business of the defendant). Moreover, a factual showing of an individual "doing business" in a district (which Infogation fails to make, providing instead conclusory allegations) is not the same thing as showing a "place" of business. *See Precision Fabrics*, 2017 WL 5176355, at *12 n.19 ("The [remote employee's] sales revenue provides little evidence that [Defendant] maintained a regular and established place of business in the district, as opposed to simply 'doing business' here.") (emphasis in original); *Winterbottom v. Casey*, 283 F. 518, 521 (E.D. Mich. 1922) ("It is plain that the . . . words ['regular and established place of business'] import something more than the mere doing of business in the district.").

In sum, the presence of these Remote Employees in this District cannot result in a finding of proper venue because their residences cannot be considered to be "of [Mapbox]." *See Bausch Health Ir. Ltd. v. Mylan Lab'ys Ltd.*, No. CV2110403SRCJSA, 2022 WL 683084, at *7 (D.N.J. Mar. 8, 2022) (finding no place of business of defendant in employees' homes based on facts resembling those cited above); *BillingNetwork Pat., Inc. v. Modernizing Med., Inc.*, No. 17 C 5636, 2017 WL 5146008, at *3 (N.D. Ill. Nov. 6, 2017) (same; reasoning "[w]hile these [five (5)] employees' homes are certainly physical places in this District and are in some sense connected to Defendant's business, none of them are a place 'of the defendant.'") (quoting *Cray*, 871, F.3d at 1360).

### 2. The Employees' Residences Are Not "Regular and Established Place[s] of Business"

Infogation's theory based on the presence of remote employees is unpersuasive for another reason. Infogation has failed to show that the places from which the employees work are "regular and established." As one district court has explained in this context: "[A plaintiff] needs to establish that the [defendant's] business *conducted from the employees' homes* is stable and established in the District, or, in other words, that this business cannot freely be moved in and out of the District." *Clark v. DocuSign, Inc.*, No. 21-CV-1007 (DLF), 2022 WL 16985185, at *2 (D.D.C. Nov. 15, 2022) (emphasis in original).

However, as already discussed, Mapbox does not condition nor incentivize the Remote Employees based on their presence in this District. *See supra* at SEC. VI.E.1(b). It also has no requirements that these employees live in cities in this District. *See id.* In other words, the Remote Employees are free to move out of this District with no effect on their work. *See id.* Consequently, these residences are not "regular and established" and cannot satisfy the second *Cray* requirement. *See Clark*, 2022 WL 16985185, at *2; *GreatGigz Sols., LLC v. ZipRecruiter, Inc.*, No. W-21-CV-00172-ADA, 2022 WL 432558, at *5 (W.D. Tex. Feb. 11, 2022) (finding remote employees' homes were not "regular and established" when the plaintiff failed to show that the defendant conditioned employment on an employee's continued residence in the district); *Regents*, 299 F. Supp. 3d at 1042 (finding facts showing that the defendant's employees "service[] its customers in this District" failed to establish "a regular and established place of business").

## F. Infogation Makes Irrelevant Allegations

Infogation appears to place significance in the alleged importance of business being conducted in this District. *See* Dkt. No. 24 at ¶ 16 ("[E]very aspect of Mapbox's products is tied to the major cities within this district."); *see also id.* at ¶ 15. However, leaving aside the veracity

of these statements, the fact that a defendant is doing "business" in a district—no matter how important it is—cannot be a means by which venue is established under § 1400(b) without (*inter alia*) an accompanying physical "place." *See Clark*, 2022 WL 16985185, at *2 ("That [Defendant] is registered to do business in the District and provides computer system design services in the District is irrelevant [under the *Cray* requirements].") (cleaned up); *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1249 (S.D. Ala. 2006) ("What is clear . . . is that the 'regular and established place of business' requirement contemplates something more than minimum contacts or simply doing business in a particular district.").

### G. Dismissal of the Entire Action Is Still Warranted Even Though the Foreign Entity MapData Has Been Joined to This Suit

Since venue is improper as to Mapbox, dismissal of the entire action is warranted. This is true even though Infogation joined MapData OOO ("MapData"), a foreign entity, to this suit with the filing of its Amended Complaint. *See* Dkt. No. 24 ¶ 4.[9] The explanation for why Infogation joined a foreign entity in this suit is likely a recognition of the flaws in its venue theories and an attempt to avoid a complete dismissal. However, dismissal of this entire action is called for even

[9] Within its venue allegations, Infogation apparently attempts to conflate Mapbox with a separate entity, MapData. *See* Dkt. No. 24 at unnumbered introductory paragraph (defining Mapbox and MapData collectively as "Mapbox"). This is an improper shotgun-like pleading method that renders Infogation's venue-allegations ambiguous. *See Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) ("This shotgun approach to pleadings, where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick, is to be discouraged.") (quoting *Rodgers v. Lincoln Towing Serv., Inc.*, 596 F. Supp. 13, 27 (N.D. Ill. 19984), *aff'd*, 771 F.2d 194 (7th Cir. 1985) (cleaned up)). This provides further support for a finding that Infogation failed to make a sufficient showing of proper venue as to Mapbox. *See id.*

if one assumes that venue is proper as to MapData.[10] When venue is improper as to some but not all the defendants in an action, a district court has multiple options. It may:

> (1) dismiss the entire action; (2) transfer the entire case to another district, provided venue is proper in that district for all Defendants; or (3) sever the claims, retaining jurisdiction only over those Defendants for whom venue is proper, and either transferring or dismissing the case as to those Defendants for whom venue is improper.

*CCD Holdings, LLC v. Cenergy USA, Inc.*, No. 18-CV-02749, 2019 WL 10369661, at *2 (N.D. Ill. Feb. 6, 2019); *see also* 14D Wright & Miller, *Federal Practice and Procedure*, § 3827 (2020) ("If venue is proper for some defendants but improper for others, the district court has wide discretion.").

Infogation (improperly) makes no differentiation between Mapbox and MapData in its allegations concerning purported infringement. *See* Dkt. No. 24 at ¶¶ 40–89. Severing the claims asserted against Mapbox from those asserted against MapData, therefore, is an unappealing option. Doing so would, if the claims against Mapbox were transferred, create two separate actions involving overlapping infringement allegations, which would result in duplicative efforts and the wasting of judicial resources. *See Alltech, Inc. v. Carter*, No. 5:08-CV-00325-KKC, 2010 WL 988987, at *4 (E.D. Ky. Mar. 15, 2010) ("[T]he Court is not inclined to sever the suit because Alltech's claims against both defendants will involve many common and overlapping facts."). If the claims against Mapbox were severed from MapData and dismissed, the possibility of inefficient parallel litigations would still exist as Infogation may attempt to refile in another venue.

---

[10] MapData has not filed any answer in this case, and its deadline to respond to Infogation's Amended Complaint is June 26, 2025. *See* Dkt. No. 63 (waiver of service). Accordingly, no statement in this Motion is meant to be an implicit or explicit representation from MapData that this or any other judicial district is a proper venue in which to hear Infogation's claims against it. MapData reserves its rights to move under Rule 12(b). Since Mapbox believes that dismissal is warranted solely based on a finding that venue is improper as to it, the argument proceeds on the assumption that this is the only finding made.

The options left, therefore, are dismissal or transfer of the entire action. The former is warranted here. Section 1406(a) provides that, when venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Showing that a transfer is in the "interest of justice" is a burden district courts have placed upon the plaintiff. *See, e.g.*, *Athletes Foot of Delaware, Inc. v. Ralph Libonati Co.*, 445 F. Supp. 35, 49 (D. Del. 1977) (finding that a dismissal was called for under § 1406(a) when "[P]laintiffs . . . failed to satisfy their burden of showing that in the interest of justice a transfer is required."). Such a showing cannot be made by Infogation for at least three reasons.

First, district courts have recognized that dismissal is appropriate when the decision to file in a certain venue was "an obvious mistake made by a sophisticated party with representation." *Cont'l Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 608 (7th Cir. 2003). As shown above, Infogation's arguments for venue are based on clear factual and legal errors. Further, even if one charitably assumes that the first time Infogation made those arguments it was only an obvious mistake, dismissal is warranted. But when Infogation decided to put forth those same errors a second time—after being corrected through a Rule 12(b)(3) motion—it renders the mistake an intentional one. Dismissal is, accordingly, called for under § 1406(a). *See Dubin v. United States*, 380 F.2d 813, 816 n.5 (5th Cir. 1967) ("It is obviously not 'in the interest of justice' to allow [§ 1406] to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district."), *superseded by statute on other grounds as stated in Franco v. Mabe Trucking Co.*, 991 F.3d 616 (5th Cir. 2021); *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) ("[W]e conclude that allowing a transfer in this case would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice.").

Second, the "proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one." *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). In terms of Mapbox, substantial burdens have already been incurred by virtue of having to file two motions to dismiss. And, more generally, avoidable judicial expenditures by this District have been (and will continue to need to be) made due to Infogation's decision to file in what is a plainly improper venue. These costs are all the more unjustifiable given that Infogation's Amended Complaint is a rehashing of its Original Complaint's § 1400(b) theories, which runs counter to the expectations placed on a pleading party. *See Aponte-Torres v. Univ. Of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006) ("Plaintiffs must exercise due diligence in amending their complaints. As a corollary of that principle, busy trial courts, in the responsible exercise of their case management functions, may refuse to allow plaintiffs an endless number of trips to the well."). As Judge Payne recognized (while he served as the magistrate for the Western District Court of Louisiana): "[P]leadings review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right." *Adrian v. Regents of Univ. of California*, No. CV 02-0381, 2002 WL 35646125, at *1 (W.D. La. Dec. 3, 2002), *report and recommendation adopted*, No. CV 02-0381, Dkt. No. 99 (W.D. La. Jan. 2, 2003), *aff'd sub nom. U.S. ex rel. Adrian v. Regents of Univ. of California*, 363 F.3d 398 (5th Cir. 2004).

It is a fair "penalty" to have an action be dismissed instead of transferred when a plaintiff has shown a willingness to unnecessarily multiply costs. This is especially true when Infogation's counsel has been admonished by this and another district court for amending complaints when faced with motions to dismiss for improper venue. *See Symbology Innovations, LLC v. Valve Corp.*, No. 2:23-CV-00419-JRG, 2025 WL 364075, at *6 ("Mr. Garteiser filed the Third Amended Complaint to unnecessarily delay the resolution of Valve's motion to dismiss."); *Decapolis Sys.,*

*LLC v. Epic Sys. Corp.*, No. W-21-CV-00434-ADA, 2021 WL 5908403, at *2 (W.D. Tex. Dec. 14, 2021) (warning counsel that "amendments to the venue allegations in the original complaint are better suited for a response to the Motion to Dismiss."). Further, attached to this penalty is the "palpable" and "substantial[]" benefit experienced by "litigants and the public . . . in the long run from better compliance" with the rules limiting venue. *See Cote*, 796 F.2d at 985.

Third, the judicial district an action is transferred to must be one "in which [the action] could have been brought." But, as Infogation recognizes in its pleading, MapData is a foreign entity. *See* Dkt. No. 24 at ¶ 4. And Infogation only submits conclusory and unsubstantiated allegations concerning the purported exercise of personal jurisdiction over MapData.[11] *See* Dkt. No. 24 at ¶¶ 6–12. This raises, at the very least, serious questions on whether any federal judicial district court could exercise personal jurisdiction over MapData. Indeed, MapData is currently anticipating filing a motion under Rule 12(b)(2) for lack of personal jurisdiction. It is not "in the interest of justice" to transfer an action to another district court when the plaintiff has failed to provide any reasonable assurance that that district will be able to exercise personal jurisdiction over all the defendants.

## VII. CONCLUSION

For at least the foregoing reasons, Mapbox respectfully requests that the Court dismiss this action under Rule 12(b)(3) and 28 U.S.C. § 1406(a) because the Eastern District of Texas is an improper venue.

[11] Again, it is ambiguous which entity Infogation is even referring to in these paragraphs of its Amended Complaint since it (apparently) uses the term "Mapbox" in a collective sense throughout.

Dated: May 19, 2025

Respectfully submitted,

/s/ *William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com
**DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Phone: (903) 230-9090
Facsimile: (903) 230-9661

***Attorneys for Defendant Mapbox, Inc.***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this May 19, 2025, on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ *William E. Davis, III*____
William E. Davis, III