**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| INFOGATION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TOMTOM INTERNATIONAL B.V., TOMTOM N.V., and TOMTOM GLOBAL CONTENT B.V.<br><br>Defendants. | Civil Action No. 2:24-cv-1022<br>(Lead Case) |

**DEFENDANTS TOMTOM INTERNATIONAL B.V., TOMTOM N.V., AND TOMTOM GLOBAL CONTENT B.V.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2), 12(b)(5) AND 12(b)(7)**

## Table of Contents

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 1

III. STATEMENT OF THE ISSUES PRESENTED ........ 2

IV. LEGAL STANDARDS ........ 2

A. Insufficient Service of Process and Lack of Personal Jurisdiction ........ 2

B. Failure to Join an Indispensable Party ........ 3

C. Amendment of Pleadings and Joinder of Additional Parties ........ 3

V. THE COURT SHOULD GRANT DISMISSAL BECAUSE INFOGATION FAILED TO EFFECT SERVICE OF PROCESS ........ 3

A. Infogation Has Failed to Effect Service Under the Hague Convention ........ 4

*a. The Law of the Forum State – Texas – Requires Service of Process Consistent with the Hague Convention* ........ 5

*b. Infogation's Highly Unusual Service of Process Techniques* ........ 7

B. Infogation's Service Attempt Through TT NA Is Also Improper ........ 10

*a. Service of Process Consistent with the Requirements of the Hague Convention Is Not Optional* ........ 10

*b. TT NA Is Not a General Manager or Alter Ego of TT Int'l* ........ 11

VI. THE AMENDED COMPLAINT IMPROPERLY ADDS DEFENDANTS TOMTOM, N.V. AND TOMTOM GLOBAL CONTENT, B.V. ........ 13

A. The Deadline to Join Additional Parties Passed Prior to the Filing of the Amended Complaint ........ 13

B. Even If Infogation had Timely Added the Additional Parties, Infogation Cannot Rely on Service Under Rule 5 When the Original Service Was Deficient ........ 14

VII. THE COURT SHOULD GRANT DISMISSAL BECAUSE INFOGATION HAS FAILED TO JOIN TOMTOM NORTH AMERICA, INC. AS AN INDISPENSIBLE PARTY 14

A. None of the Current Defendants Could Have Committed Any Act of Direct Infringement, and Thus Have Not Committed Any Acts of Indirect or Induced Infringement ........ 15

B. Infogation's Apparent Rationale for Excluding TT NA From This Litigation Is Improper 16

VIII. CONCLUSION ........ 18

## I. INTRODUCTION

Defendants TomTom International B.V. ("TT Int'l" or "Defendant"), TomTom N.V. ("TT NV"), and TomTom Global Content B.V. ("TT GCBV") (collectively "Defendants") respectfully move the Court to dismiss Plaintiff Infogation Corporation's ("Infogation" or "Plaintiff") Amended Complaint for Patent Infringement (the "Amended Complaint") (ECF 35) with prejudice pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process and under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## II. FACTUAL BACKGROUND

Infogation's original pleadings ("Original Complaint") correctly identified TT Int'l as a Netherlands corporation with a principal place of business in Amsterdam, The Netherlands. (ECF No. 1 ¶ 1). The original summons was issued on January 21, 2025, and was addressed to TT Int'l "c/o" TomTom North America, Inc.[1] ("TT NA") further "c/o" National Registered Agents, Inc. ("NRAI"), and incorrectly identified the service address as 330 N. Brand Blvd., Glendale, California 91203. (ECF No. 4 at 1). This is instead the address for the California branch of the service agent for TT NA. (de Beurs Decl. ¶ 6). TT NA is not a party to this litigation. Neither TT NA nor its service agent, National Registered Agents, Inc. (NRAI), is authorized to accept service on behalf of TT Int'l. *Id*. The Service of Process Summary Transmittal Form provided to TT NA by NRAI explicitly states that the "Entity Served" was TT NA. (Exhibit A, pp. 2-3).

TT Int'l is an independent legal entity with its own management team and operations that are separate and distinct from TT NA. (de Beurs Decl. ¶¶ 7-9). TT Int'l does not directly own stock in

[1] A predecessor entity, TomTom, Inc. ("TTI"), was merged into TT NA on December 31, 2022, as recorded by the Massachusetts Secretary of the Commonwealth. (Wijlens Decl. ¶ 5). TTI no longer exists. By operation of law, all of TTI's obligations have been assumed by TT NA. Mass. Gen. Laws. C. 156B § 80(1); *see also Hoy v. Nat'l Sch. Bus Servs., Inc.*, No.. 04-2238-G (Mass. Super. Ct. June 22, 2005) (under Massachusetts law, "the corporation that emerges from a merger assumes … all liabilities and obligations of the subsumed organization."). The Amended Complaint refers to time periods prior to 2022, and accordingly, references herein to TT NA include the predecessor entity TTI.

TT NA. (de Beurs Decl. ¶ 7). TT Int'l and TT NA are separated from one another by multiple intermediary entities, with no direct line of ownership between them. *Id*. TT Int'l is owned by TomTom, N.V. ("TT NV"), while TT NA is owned by TomTom Global Content, B.V. ("TT GCBV") which in turn is owned by TT NV. *Id*. There is no overlap in management between the two entities. (de Beurs Decl. ¶ 8). TT Int'l does not file taxes on behalf of TT NA. *Id*. The corporate relationship is indirect and the two entities operate independently. (de Beurs Decl. ¶¶ 7-9).

On March 12, 2025, Infogation served Infringement Contentions on Defendant. The sole accused instrument or accused product was the 'TomTom Trucker' ("Trucker" or "accused product(s)" or "accused instrument(s)").

In response to Defendant's Motion to Dismiss (ECF No. 19), Infogation filed the Amended Complaint on April 4, 2025. To the best of Defendants' knowledge and supported by the absence of a summons on the Court's docket, Infogation did not engage in another attempt at service. Instead, Infogation has added two other foreign entities along with additional paragraphs purporting to justify Infogation's flawed attempt at service under California law. Infogation's Amended Complaint was filed after the Court's deadline to join additional parties.

## III. STATEMENT OF THE ISSUES PRESENTED

Whether the Court should dismiss with prejudice Infogation's Complaint for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5) and for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and for failure to join an indispensable party under Fed. R. Civ. P. 12(b)(7).

## IV. LEGAL STANDARDS

### A. Insufficient Service of Process and Lack of Personal Jurisdiction

Valid service of process is required before a defendant is subject to the jurisdiction of a federal court. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Where a defendant is not properly served, the remedy is dismissal of the action for insufficient service of process and for

lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2) and 12(b)(5). "[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). Service on a foreign corporation is governed by Rule 4(f). *See* Fed. R. Civ. P. 4(h)(2).

### B. Failure to Join an Indispensable Party

Dismissal is warranted if a party fails to join a necessary and indispensable party under Rule 19. Fed. R. Civ. P. 12(b)(7). The movant bears the initial burden of demonstrating that an absent party is necessary, after which the burden shifts to the party opposing joinder. *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009).

### C. Amendment of Pleadings and Joinder of Additional Parties

"Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 734 (5th Cir. 2018) (quoting *S&W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)). Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave. *S&W Enters.*, 315 F.3d at 536.

## V. THE COURT SHOULD GRANT DISMISSAL BECAUSE INFOGATION FAILED TO EFFECT SERVICE OF PROCESS

The Court should dismiss Infogation's Complaint for insufficient service of process under Fed. R. Civ. P. 12(b)(5) and for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Infogation has not effected valid service of process on TT Int'l for at least two reasons.

First, TT Int'l is a Netherlands corporation that has no authorized agent to accept service in the State of Texas. (de Beurs Decl. ¶¶ 5-6). As a foreign corporation, TT Int'l must be served in accordance with the requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). Fed. R. Civ. P. 4(f)(1). It should come as no surprise

that The Netherlands is a signatory to the Hague Convention, which is so named after the capital city of the South Holland province of The Netherlands where signatories met in 1899 and 1907. A Netherlands corporation cannot be served directly by mail under the Hague Convention, and instead, service must be made through the designated methods provided therein. Infogation has failed to do so.

Second, Infogation's attempt to effect indirect service through TT NA is also improper. Neither TT NA nor its agent is authorized to accept service for TT Int'l. (de Beurs Decl. ¶ 6). Further, TT NA is not an alter ego of TT Int'l under Texas law nor a general manager under California law. The two companies operate as separate, distinct, and independent entities. (de Beurs Decl. ¶ 8). Therefore, indirect service would be improper even if the Hague Convention did not apply.

### A. Infogation Has Failed to Effect Service Under the Hague Convention

TT Int'l was the only defendant named in the Original Complaint. (ECF No. 1 ¶ 2). The Amended Complaint purports to add two new related entities, both of which are Netherlands corporations and neither of which Infogation has attempted to independently serve. (ECF No. 35 ¶¶ 2, 8). Infogation's Amended Complaint correctly alleges that TT Int'l is a Netherlands corporation with a principal place of business in Amsterdam, The Netherlands. (ECF No. 35 ¶ 6). TT Int'l does not have offices in the State of Texas or elsewhere in the United States. (de Beurs Decl. ¶ 10).

As a foreign corporation, TT Int'l must be served abroad. *See* Fed. R. Civ. P. 4(f)(1). The Netherlands and the United States are both signatories to the Hague Convention. The Supreme Court has long held that "compliance with the [Hague] Convention is mandatory in all cases" which require the transmittal of documents abroad "as a necessary part of service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705-707 (1988). Whether transmittal abroad is a necessary part of service, and thus whether mandatory application of the Hauge Convention is triggered, depends on the law of the forum state. *Id*. at 700 ("If the internal law of the forum state

defines the applicable method of serving process as requiring transmittal of documents abroad, then the Hague Service Convention applies."). Infogation's action against TT Int'l is such a case.

***a. The Law of the Forum State – Texas – Requires Service of Process Consistent with the Hague Convention***

In applying the Supreme Court's decision in *Schlunk*, courts have considered whether transmittal abroad is required under the applicable service laws of the forum state (in which the case was filed). *See, e.g., Buffalo Patents, LLC v. ZTE Corp.*, 605 F.Supp.3d 917, 925 (W.D. Tex. 2022) ("[T]he rule from Schlunk is that if ***state law*** requires the transmittal of a document as part of the method of service process, the Hague Service Convention is implicated.") (emphasis added); *ACQIS Ltd. Liab. Co. v. Lenovo Grp., Ltd.*, 572 F.Supp.3d 291, 301 (W.D. Tex. 2021) ("This Court reads the Texas service statutes to require the Secretary of State to mail the service to the foreign entity … implicating the Hague Service Convention."); *Brewer v. Suzuki Motor of Am., Inc.*, No. 4:15-CV-197, 2015 U.S. Dist. LEXIS 93038, at *3 (S.D. Tex. July 17, 2015) ("District courts in the Fifth Circuit have found that service of process on foreign defendants under § 17.043 triggers the requirements of the Hague Convention."); *see also CPI Card Grp. – Ind. Inc. v. Smart Packaging Sols., SA*, 588 F.Supp.3d 876, 879 (N.D. Ind. 2022) ("The forum state here is, of course, Indiana, so the Court must look to Indiana law to determine whether service was proper.");

Infogation relies on this Court's previous interpretation of "forum state" as referring to signatory countries to the Hague Convention. (ECF No. 35 ¶ 11) (citing to *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, 697 F.Supp.3d 635, 644-645 (E.D. Tex. Oct. 6, 2023) ("In determining whether service involves the transmittal of documents abroad, courts are to look to the method of service prescribed by the internal law of the forum state, <u>which in this case is the United States</u>.") (emphasis added) (internal quotations removed).). Defendants respectfully submit that the interpretation set forth in *Arigna* is inconsistent with the Supreme Court's decision in *Schlunk* and how other courts have applied it. The *Schlunk* decision is clear that the forum state is the <u>state in which the</u>

litigation was filed – there, the case was filed in Illinois and the Illinois long-arm statue did not require transmittal abroad. *Schlunk*, 486 U.S. at 696-706 ("[T]he internal law of the forum state controls. Thus, where, as here, the forum state's law does not define the applicable method of serving process as requiring the transmittal of documents abroad, the Convention does not apply. … In this case, the Illinois long-arm statute authorized Schlunk to serve VWAG by substituted service on VWoA, without sending documents to Germany.").

It follows that, in this case, whether service under the Hague Convention is mandatory hinges on Texas service laws. *See, e.g., ZTE Corp.*, 605 F.Supp.3d at 925 (holding that "the rule from Schlunk is that if [the forum] state law requires the transmittal of a document as part of the method of serving process, the Hague Service Convention is implicated"). Courts in the Fifth Circuit have repeatedly confirmed that the Texas long-arm statute requires transmittal of documents abroad to serve a foreign corporation:

> Section 17.043 of the Texas long-arm statute provides for service of a nonresident for acts arising from the nonresident's business in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.043. If service is made pursuant to § 17.043, a copy of the process and notice of service must immediately be mailed to the nonresident or the nonresident's principal place of business. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.045.

*Bayoil Supply & Trading of Bahamas v. Jorgen Jahre Shipping AS*, 54 F.Supp.2d 691, 693 (S.D. Tex. 1999). Infogation's reliance on California service law is meaningless, as this case was filed in Texas and "service of process on foreign defendants under § 17.043 triggers the requirements of the Hague Convention." *Brewer*, 2015 U.S. Dist. LEXIS 93038, at *3; *see also ACQIS*, 572 F.Supp.3d at 301 ("Here, because the Texas statutes require the Secretary of State to mail service to the defendant abroad, the Hague Service Convention preempts the Texas statute and substituted service is improper."). Because Defendant "is a foreign resident, notice must be mailed abroad, triggering the requirements of the Hague Convention." *Bayoil Supply*, 54 F.Supp.2d at 693; *Sang Young Kim v. Frank Mohn A/S*, 909 F.Supp. 474, 479 (S.D. Tex. 1995) ("Because the Defendant in this case could

be properly served under Texas law only by transmitting judicial documents to the Defendant abroad, the Hague Convention is applicable.").

It is therefore clear that service in compliance with the Hague Convention is mandatory in this case. *See Schlunk*, 486 U.S. at 700. The Netherlands is a signatory to the Hague Convention and does not object to Article 10(c) of the Hague Convention, which permits personal service to be effected by "judicial officers, officials or other competent persons." *See* Response of the Netherlands to Questionnaire of July 2008 relating to the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *available at* http://www.hcch.net/upload/wop/2008netherlands14.pdf. "In the Netherlands, personal service in civil matters is effected by bailiffs; the Netherlands has interpreted the category of 'judicial officers, officials or other competent persons' in Article 10 as referring to bailiffs." *Id.* at 5 ("In civil procedures the servicing of documents is done by a bailiff"); *id.* at 28 (defining "judicial officers, officials or other competent persons" as "bailiffs"). Infogation's attempt to simply serve non-party TT NA in California contravenes the Hague Convention, and the service attempt is thus improper and ineffective. *See Compass Bank v. Katz*, 287 F.R.D. 392, 397 (S.D. Tex. 2012) ("Because service under Rule 4(f)(3) cannot be in contravention of any international agreement, the Court must obey the dictates of the Hague Convention.").

***b. Infogation's Highly Unusual Service of Process Techniques***

Where international law is concerned – here, because the forum state's laws require documents to be transmitted abroad through the operation of Rule 4(h)(2) – Rules 4(f)(1) and 4(f)(3) are implicated. *Terrestrial Comms LLC v. NEC Corp.*, 2020 U.S. Dist. LEXIS 110983, at *3 (W.D. Tex. June 24, 2020). As discussed above, both the United States and the Netherlands are signatories to the Hague Service Convention. Thus, all service conducted abroad, thereby invoking the Hague Service Convention, must comply with its provisions "unless it can be served directly through a domestic

agent." *Arroyo v. Oprona, Inc.*, 2016 U.S. Dist. LEXIS 185387, at *8 (S.D. Tex. Dec. 30, 2016) (citing *Schlunk*, 486 U.S. at 707). As discussed in this motion, TT Int'l has no domestic agent authorized to accept service. (de Beurs Decl. ¶¶ 5-6). Yet even assuming the existence of a domestic agent – TT NA, as the Amended Complaint alleges – Infogation has failed to follow the proper procedure for seeking this Court's permission for substituted service.

Service not invoking the Hague Service Convention's provisions – which clearly is what Infogation has sought to affect – must, as explained above, comport only with the process service laws of the forum state. *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 537 (5th Cir. 1990) (citing *Schlunk*, 486 U.S. at 699-706). As Infogation filed this case in Texas, an analysis of Rule 4(h)(1) turns on Texas state service of process law. *WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co.*, 2021 U.S. Dist. LEXIS 127056, at *6 (W.D. Tex. July 8, 2021). However, courts caution that "even if other methods of obtaining service of process are technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon [a] defendant." *Midmark Corp. v. Janak Healthcare Private Ltd.*, 2014 U.S. Disst. LEXIS 60665, at *5 (S.D. Ohio May 1, 2014).

Under Rule 4(h)(1)(A), a defendant may be served via a manner prescribed by Rule 4(e)(1) that complies with the law of the forum state. *See* Fed. R. Civ. P. 4(e)(1). Texas Rule of Civil Procedure 106 governs service within the state, and Texas law requires strict compliance with Rule 106. *See Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990). "There is no doubt that service here did not strictly comply with Rule 106 because a motion for substituted service was never filed. *See* Tex. R. Civ. P. 106. Therefore, the Court must conclude that service was not properly affected under Rule 4(h)(1)(A)." *Wilmington Trust, N.A. v. Fgnow3350 LLC*, 2024 U.S. Dist. LEXIS 183558, at *17-18 (N.D. Tex. June 18, 2024). This Court should find the same here.

Infogation's litigation practices are in stark contrast to the general procedure followed by plaintiffs bringing suit in Texas against foreign defendants whereby a legitimate attempt at service consistent with the Hague Convention is first made and then, where that fails, the plaintiff may seek permission of the court for substituted service. *See, e.g., PNC Bank N.A. v. Baglien*, 347 F.R.D. 311 (S.D. Tex. Aug. 1, 2024) (denying motion for substituted service on Canadian defendant, noting that Rule 4(m) does not have a time limit and directing plaintiff to continue efforts consistent with the Hague Convention); *Sales v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F.Supp.3d 404 (N.D. Tex. Sep. 29, 2020) (granting motion for substituted service after Texas Secretary of State transmitted documents and defendant did not respond); *Metro Equip. & Rental Co. v. Tsurumi Mfg. Co.*, 2021 U.S. Dist. LEXIS 255134 (W.D. Tex. Sep. 10, 2021) (detailing the proper procedure for seeking substituted service on consideration of plaintiff's motion for service); *Menon v. Water Splash, Inc.*, 2018 Tex. App. LEXIS 194 (Jan. 9, 2018) (plaintiff first attempted service on the Canadian defendant through the Texas Secretary of State, then filed a motion for substituted service pursuant to Article 10(a) of the Hague Service Convention which the trial court granted).

Courts require these steps because "[i]f [foreign] defendants could be served notice of U.S. cases by ordinary or electronic mail, no plaintiff 'would ever choose' to serve them through the central authority, in person, or by mail requiring a signature, and much of their assurance of receiving 'actual and timely notice of suit' would evaporate." *PNC Bank*, 347 F.R.D. at 315. Infogation's counsel has made a habit of bee-lining to the most-permissive form of substituted service without first making any legitimate efforts consistent with the law, without requesting leave to do so, and without any supporting fact pattern justifying the exceptional behavior. "The parties to the Hague Convention went to a great deal of trouble to set up a flexible interface for their respective service processes. If clever end runs are to make this achievement irrelevant, this Court will be the last to join in them." *Id.* (internal citations removed).

### B. Infogation's Service Attempt Through TT NA Is Also Improper

Infogation now wrongly alleges that TT Int'l has been served through non-party TT NA in California. (ECF No. 35 ¶¶ 10-11). As Infogation knows, TT NA is an independently-operating entity that is not authorized to accept service for the Netherlands corporation TT Int'l. (de Beurs Decl. ¶¶ 5-6). Infogation chose to sue a Netherlands corporation, and the only proper place of service is TT Int'l's principal place of business in the Netherlands.

#### *a. Service of Process Consistent with the Requirements of the Hague Convention Is Not Optional*

As discussed above, Infogation cannot simply evade the mandatory application of the Hague Convention by deliberately avoiding communications with the Texas Secretary of State and seeking to serve in California (or anywhere else in the United States). While the Federal Rules may generally allow service in other states (Fed. R. Civ. P. 4(e)(1)), that option is preempted by operation of the Hague Convention and the Supreme Court's precedent making it mandatory in this case. *See, e.g., Schlunk*, 486 U.S. at 699 ("By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which [the Hague Convention] applies."). Contrary to the arguments Infogation advances in the Amended Complaint, <u>Texas law</u> – the state in which Infogation chose to bring this action – controls whether indirect service through TT NA would be proper. *See CPI Card Grp.*, 588 F.Supp.3d at 879 ("The forum state here is, of course, Indiana, so the Court must look to Indiana law to determine whether service was proper."); *see also IDS Prop.*, 2018 U.S. Dist. LEXIS 211643, at *6 ("Rather, Schlunk plainly states that a court must look to the forum state's internal law … Here, the forum state is Minnesota, <u>not California</u>.") (emphasis added).

The Supreme Court has confirmed that the means of service must conform with the <u>forum state's</u> – where the case was filed - long-arm statute. *Schlunk*, 486 U.S. at 696 ("This case involves an attempt to serve process on a foreign corporation by serving its domestic subsidiary which, under state

law, is the foreign corporation's involuntary agent for service of process.")[2]; *id.* at 696-706 ("[T]he internal law of the forum state controls. Thus, where, as here, the forum state's law does not define the applicable method of serving process as requiring the transmittal of documents abroad, the Convention does not apply. … In this case, the Illinois long-arm statute authorized Schlunk to serve VW AG by substituted service on VWoA, without sending documents to Germany.").

The Fifth Circuit has consistently held "that 'the individual sought to be served must have actually authorized another to accept service of process.'" *Lisson v. ING GROEP N.V.*, 262 F.App'x 567, 569 (5th Cir. 2007). Neither TT NA, nor NRAI, is authorized to accept service on behalf of TT Int'l. (de Beurs Decl. ¶ 6). For this reason alone, Infogation's service of process is insufficient.

***b. TT NA Is Not a General Manager or Alter Ego of TT Int'l***

To the extent Infogation seeks to rely on a corporate relationship between TT Int'l and TT NA, TT NA is not a subsidiary or parent of TT Int'l. (de Beurs Decl. ¶ 7). Even if the relationship were closer, service on a subsidiary is not imputed to a parent corporation absent actual authorization. *Paradigm Ent., Inc. v. Video Sys. Co.*, No. CIV. A. 3:99-CV2004P, 2000 U.S. Dist. LEXIS 2667, at *7-8 (N.D. Tex. Mar. 3, 2000) ("Service upon a subsidiary does not usually constitute service on the parent corporation."). That is particularly true where, as here, the parent and subsidiary maintain separate and distinct corporate identities. *See, e.g., U.S. ex rel. Wilkins v. N. Am. Const. Corp.*, 173 F.Supp.2d 601, 642 (S.D. Tex. 2001) ("[S]ervice of process on a wholly-owned subsidiary does not constitute service of process on a parent corporation where separate corporate identities are maintained."). The record demonstrates that TT Int'l is an independent legal entity with its own management team and operations that are separate and distinct from TT NA, and that this separation has existed since the founding of the respective entities. (de Beurs Decl. ¶¶ 7-9).

[2] In contrast to Infogation, the *Schlunk* plaintiff actually sued the U.S.-based subsidiary – who was registered to do business in Illinois and had a registered agent for receipt of process in Illinois – prior to the attempt at service on the German parent. *Id.* at 697.

Similarly, the "alter ego" exception also does not apply in this case. The Fifth Circuit has held that, under narrow circumstances, "even if a domestic subsidiary is not explicitly authorized by its foreign parent corporation as an agent for service, the subsidiary might still be capable of receiving such service" where the foreign parent corporation exercises such a degree of control over the domestic subsidiary that the two are essentially one. *Lisson*, 262 F. App'x at 570. Infogation bears a heavy burden of proof in order to utilize this exception. *See Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 Fed. App'x 326, 331 (5th Cir. 2011) ("Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent."). Infogation has not even attempted to meet this burden, nor could it because (i) the separation between TT Int'l and TT NA is clear and indisputable, and (ii) TT NA is a California corporation with a headquarters in New Hampshire which may not be sued for patent infringement in Texas under 28 U.S.C. § 1400(b).

TT NA is not a direct subsidiary of TT Int'l. (de Beurs Decl. ¶ 7). The daily operations of TT Int'l and TT NA are separate, with each entity having its own management team. (de Beurs Decl. ¶ 8). TT Int'l's business is managed by a separate board, none of whom are officers or directors of TT NA. *Id*. TT Int'l does not file tax returns on behalf of TT NA. *Id*.

It is plain that TT Int'l and TT NA are independent entities with their own management team and operations such that neither entity is an alter ego for the other. Infogation's improper attempt to serve TT NA cannot be imputed to TT Int'l. *See Blue Spike, LLC v. ASUS Computer Int'l, Inc.*, No. 6:16-CV-1384-RWS-KNM, 2018 U.S. Dist. 48349, at *5-6 (E.D. Tex. Feb. 20, 2018) (holding service on U.S. subsidiary was insufficient under alter ego analysis even though foreign parent owned 100% of the U.S. subsidiary's stock); *UNM Rainforest Innovations v. D-Link Corp.*, No. 6-20-CV-00143-ADA, 2020 U.S. Dist. LEXIS 122328, at *9 (W.D. Tex. July 13, 2020) (finding indirect service on

foreign company through its domestic subsidiary that is not an alter ego would violate "due process protections afforded by the United States Constitution").

Infogation was required to serve TT Int'l pursuant to the Hague Convention, which it failed to do and therefore failed to effect service of process under Fed. R. Civ. P. 12(b)(5). Dismissal is thus warranted for insufficient service and lack of personal jurisdiction. *J.O. Alvarez, Inc. v. Rainbow Textiles, Inc.*, 168 F.R.D. 201, 203 (S.D. Tex. 1996) ("[A] district court cannot exercise jurisdiction over a defendant which has not been served properly.").

## VI. THE AMENDED COMPLAINT IMPROPERLY ADDS DEFENDANTS TOMTOM, N.V. AND TOMTOM GLOBAL CONTENT, B.V.

Infogation's Amended Complaint purports to add two new defendants – TomTom, N.V. ("TT NV") and TomTom Global Content, B.V. ("TT GCBV") – to this litigation. (ECF No. 35 ¶¶ 2, 8). Infogation has not properly joined these new defendants because the deadline to join new parties passed prior to the filing of the Amended Complaint. (ECF No. 23 at 4). Infogation has not filed a motion for leave, nor moved to modify the scheduling order.

### A. The Deadline to Join Additional Parties Passed Prior to the Filing of the Amended Complaint

Infogation filed its Amended Complaint on April 4, two days after the April 2, 2025 deadline to join additional parties (though before the December 23, 2025 deadline to file amended pleadings). (ECF No. 23 at 4). Infogation did so without leave of this Court, nor did they move for modification of the Court's Docket Control Order. Even if Infogation had obtained leave, "[a] party cannot use a motion for leave to amend the pleadings as a device to circumvent the separate deadline for moving for leave to join parties." *Grant v. Rathbun*, No. 3:15-cv-4025-D, 2016 U.S. Dist. LEXIS 58490, at *4 (N.D. Tex. May 3, 2016) ("Such a reading of a scheduling order would effectively render meaningless the deadline for leave to join parties, because an amended pleading could be used to add parties.").

Infogation offers no explanation for its failure to amend within the deadline to join additional

parties, much less satisfy the good cause standard requiring Infogation "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters.*, 315 F.3d at 535 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). The two foreign parties Infogation seeks to join were clearly easily discoverable, as evidenced by the publicly-available web pages Infogation cites to in the Amended Complaint. (ECF No. 35 at 2). Defendant also informed Infogation of the existence of the two foreign parties in the declaration supporting Defendant's Motion to Dismiss the Original Complaint on March 17, well before the April 2 deadline. (ECF No. 19-1).

### B. Even If Infogation had Timely Added the Additional Parties, Infogation Cannot Rely on Service Under Rule 5 When the Original Service Was Deficient

The Federal Rules allow for service of "subsequent documents" via the Court's electronic filing system or by service of the attorney representing the respective party. Fed. R. Civ. P. 5. However, the plain language of Rule 5 makes clear that this is only the case <u>after</u> Rule 4 service has been properly completed. *Id.* As explained above, Infogation has not properly served TT Int'l – the sole named defendant in the Original Complaint – and thus cannot rely on the lower service bar of Rule 5 as to TT GCBV and TT NV.

## VII. THE COURT SHOULD GRANT DISMISSAL BECAUSE INFOGATION HAS FAILED TO JOIN TOMTOM NORTH AMERICA, INC. AS AN INDISPENSIBLE PARTY

Infogation's Amended Complaint alleges that TT NA is the distributor of the accused products in the United States. (ECF No. 35 ¶¶ 7, 9, 11). However, TT NA is not a party to this litigation. The Amended Complaint consists solely of allegations of direct infringement by various Netherlands corporations, with a singular and unsubstantiated allegation of indirect infringement, (ECF No. 35 ¶ 20), and a bare allegation of induced infringement which is conditional upon notice provided by the Amended Complaint, (ECF No. 35 ¶ 25, 41, 57). Infogation knows that TT Int'l does not sell the accused products in the United States. (de Beurs Decl. ¶ 10). TT Int'l's control over the

accused products ceases when they are sold to TT NA abroad. (Wijlens Decl. ¶ 7). Despite that knowledge, Infogation has chosen to sue all of the various international entities in the organizational chart linking TT Int'l and TT NA, with the strange exception of the one entity who actually imports products into the U.S. for sale and thus the one entity theoretically liable for the alleged infringement.

### A. None of the Current Defendants Could Have Committed Any Act of Direct Infringement, and Thus Have Not Committed Any Acts of Indirect or Induced Infringement

"The traditional understanding that our patent law operates only domestically and does not extend to foreign activities is embedded in the Patent Act itself, which provides that <u>a patent confers exclusive rights in an invention within the United States</u>." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007) (emphasis added) (internal citations removed); *see also* 35 U.S.C. § 154(a)(1). Indirect infringement, which can encompass conduct occurring outside of the United States, requires underlying direct infringement in the United States. *Power Integrations v. Fairchild Semiconductor Int'l*, 711 F.3d 1348, 1371 (Fed. Cir. 2013). United States patent laws do not provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all. *Id.*

To the extent that the alleged acts of Defendant constitute 'offers to sell' rather than 'sales' of the accused products, such acts do not establish liability for direct infringement because the sales contemplated by any such offers were intended to, and did so, occur outside the United States. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1309 (Fed. Cir. 2010) ("[T]he location of the contemplated sale controls whether there is an offer to sell within the United States."); *Semiconductor Energy Laboratory Co. Ltd. v. Chi Mei Optoelectronics Corp.*, 531 F.Supp.2d 1084, 1111 (N.D. Cal. 2007) ("In light of the strong presumption against extraterritorial application, … an 'offer of sale' may constitute direct infringement only if the contemplated sale is to take place within the United States."); *Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*, 130 F.Supp.2d 1152, 1171 (C.D. Cal. 2001) ("An 'offer to

sell' made within the United States that contemplates a sale of goods outside of the United States is not within the permissible scope of liability for 35 U.S.C § 271(a).").

Further, to the extent Infogation wishes to rely on Defendant's alleged knowledge that the accused products would be imported into and sold within the United States, "[m]ere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability under section 271(a)." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005); *see also Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co., Ltd.*, 479 F.Supp.2d 388, 405 (S.D. N.Y. 2007) (the fact that one party had knowledge another party was importing allegedly infringing goods into the United States did not create liability under § 271(a)).

If Infogation wants to pursue an action for infringement of a United States patent, then they need to sue a party who has made, sold, offered for sale, or imported the allegedly-infringing product in the United States. Defendant has been forthright about who that party is. The Supreme Court has been clear that what Infogation seeks to do here is not allowed: "If [Infogation] desires to prevent copying in foreign countries, its remedy today lies in obtaining and enforcing foreign patents." *Microsoft*, 550 U.S. at 456.

### B. Infogation's Apparent Rationale for Excluding TT NA From This Litigation Is Improper

The reason for Infogation's context-specific inclusion and exclusion of TT NA appears to be litigation driven. As a California corporation headquartered in New Hampshire, it is likely that TT NA cannot be sued for patent infringement in the Eastern District of Texas. *See, e.g., In re Volkswagen Grp. Of Am., Inc.*, 28 F.4th 1203, 1208-1214 (Fed. Cir. 2022); 28 U.S.C. § 1400(b). Joining TT NA would thus have the potential to destroy venue in this district. Infogation's efforts to keep this case in this district by suing only TT Int'l, while relying on TT NA for allegations in the Amended Complaint and for (improper) service on TT Int'l, should be rejected. Either Infogation

needs to join TT NA and move this case to an appropriate venue, or Infogation needs to cease relying on TT NA for infringement allegations and the (improper) service attempts.

As set forth in the Amended Complaint, Infogation's allegations make TT NA an indispensable party. Infogation alleges that Defendants "provide the Accused Products to TomTom North America, Inc." and that TT NA is the final link in the supply chain of the accused products to the United States. (ECF No. 35 ¶¶ 7, 9). TT NA (or TTI, the predecessor entity) has been the sole distributor of the accused products in the United States for the time periods specified in the Amended Complaint. (Wijlens Decl. ¶ 6). TT Int'l merely sells products to TT NA, with all of said sales to TT NA taking place outside of the United States. (Wijlens Decl. ¶¶ 6-9). The only possible actor who could perform the "direct infringe[ment]" recited in Counts I-III of "importing, selling, and/or offering for sale the Accused Instrumentalities" would be U.S.-based TT NA. (ECF No. 35 ¶¶ 19, 35, 51). The same is true of the allegations of "indirect[] infringe[ment] … by, among other things … importing, offering for sale, and/or selling." (ECF No. 35 ¶¶ 24, 40, 56). TT Int'l does not import the accused products into the United States, much less sell or offer for sale those products. (Wijlens Decl. ¶¶ 6-9). The Fifth Circuit has held that "where the subsidiary was the primary participant in the events giving rise to the lawsuit … [f]ailure to join the subsidiary in such circumstances would be improper." *Dernick v. Bralorne Res., Ltd.*, 639 F.2d 196, 199 (5th Cir. 1981). The Court should reach the same conclusion here.

This issue will continue to be present throughout this litigation, as Infogation cannot seek relief from TT Int'l for the alleged actions of TT NA in the United States. *See, e.g., Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) ("In the absence of evidence showing that the parent company either was an alter ego of the subsidiary or controlled the conduct of the subsidiary, we refused to find direct infringement."). TT Int'l and TT NA are independently operating entities and are not alter egos of each other for the reasons discussed in Section II. TT Int'l does not

control TT NA's operations, management, or distributions. TT NA is an indispensable party at least because in its "absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A); *see also Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (holding that when a plaintiff's allegations seek to impose liability on a parent for the acts of a subsidiary, the subsidiary becomes an "active participant" and "joinder of the subsidiary is required"). Thus, this case should be dismissed for failure to join TT NA as an indispensable party.

## VIII. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and award any additional relief that the Court deems just and proper.

Respectfully submitted,

Date: June 2, 2025

*<u>/s/ Mark D. Siegmund</u>*

Mark D. Siegmund
Texas Bar No. 24117055
msiegmund@cjsjlaw.com
Craig D. Cherry
Texas Bar No. 24012419
ccherry@cjsjlaw.com
William D. Ellerman Texas Bar No.
24007151 wellerman@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES, PC**
Bridgeview Center
7901 Fish Pond Rd., 2nd Floor
Waco, TX 76710
T: (254) 732-2242

Wesley W. Whitmeyer
litigation@whipgroup.com
wwhitmeyer@whipgroup.com
Henry Purtill
hpurtill@whipgroup.com
**WHITMEYER IP GROUP LLC**
600 Summer St.
Stamford, CT 06901
T: (203) 703-0800

***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

This is to certify that on this 2nd day of June 2025, a true and correct copy of the foregoing Motion to Dismiss was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

June 2, 2025

*/s/ Mark D. Siegmund*
Mark D. Siegmund